O’NIELL, J.
On the 10th of April, 1905, Dr. Robert P. Woods, the plaintiff in this suit, sold to one John Donley for $337.50 cash, a tract of timber land, containing 160 acres, in Union parish. It was stipulated in the deed that Donley would reconvey the property to Dr. Woods on repayment of the price of $337.50 at any time within a year.
On the 13th of January, 1906, a representative of the Union Sawmill Company, the defendant in this suit, called upon Dr. Woods, in Sherrill, Ark., with a view of buying the timber on the land for the sawmill company. Dr. Woods agreed to sell the timber for $1,300, and gave the representative of the sawmill company a letter dated the 13th of January, 1906, addressed to Edward Everett, a deputy clerk of court at Farmers-ville, the parish seat of Union parish, authorizing him to make the sale, as follows, viz.:
‘T have sold to Union Sawmill for a consideration of $1,300.00 (thirteen hundred dollars), the timber on my land held in trust by Mr. John Donley; kindly transfer title of land back to me, and title of timber to Union Sawmill, timber to be removed in time limit of six years. Kindly hand Mr. Donley amount due him and send balance check to me. Tours,
“[Signed] Robert P. Woods, M. D.”
Acting upon the letter from Dr. Woods on the 22d of January, 1906, John Donley sold the timber to the Union Sawmill Company for $1,300, of which $341.80 was paid to Donley and $958.20 to Dr. Woods; and at the same time Donley reconveyed the land without the timber to Dr. Woods for the $341.S0, which Donley then received from the Union Sawmill Company for the timber.
The deed from Donley to the sawmill company purported to be a conveyance of all of the timber on the land, measuring eight inches or more in diameter at the stump, and so much of the smaller timber as would be necessary for skid poles and for the purpose of removing the timber from the land-. The instrument contains the following provisions pertinent to the present controversy, viz.:
“The party of the second part [the sawmill company] shall cut and remove said timber as expeditiously as possible, and it is agreed that unless it shall have removed all of the same within a period of six years from the date hereof it shall be responsible for and pay to the first party [John Donley] the full amount of taxes assessed against said land and timber after the expiration of said period of six years from this date until such time as said timber is removed and said possession returned to said first party. The said second party shall have free and uninterrupted possession of said land during the term of this indenture for the purpose herein set forth, and the right to cut out and construct roads, tramways and railroads over, on and across the same, and the right to take earth and stone within the limits of the right of way, and change water courses for the purpose of constructing roads, tramways and railroads, and the right to use the same for the removal of the timbel' on the lands herein described and the timber it may own or buy on other lands, and have free ingress and egress for employés, teams, vehicles and locomotives, or *557 other means of transportation into, upon and off of the same, with the further right to maintain logging camps, with the usual privileges of camping while engaged in removing the timber off said lands and other lands, and, to this end, may be regarded as the holder of said lands, to sue for and' recover the same from all persons whatever holding or attempting to hold the same: Provided that the said first party, his heirs or legal assigns, may retain such possession of said lands at all times as shall not interfere with the rights of the second party under this deed for the purpose aforesaid.”
The sawmill company did not cut or remove any of the timber within the term of six years, which expired on the 22d of January, 1912.
On the 29th of April, 1912, the sawmill company addressed and mailed a letter to Dr. Woods, informing him that, according to the stipulation in the timber deed from Donley, whereby the purchaser was allowed whatever time would be necessary, after six years, to remove the timber, on payment of the taxes assessed against the land, the company was then rendering the land for assessment for the taxes of 1912.
On the 1st of February, 1913, the sawmill company addressed and mailed another letter to Dr. Woods, informing him that the company had paid the taxes on his land for the year 1912, and was having the land assessed for the taxes of 1913.
On the 4th of December, 1913, the sawmill company addressed and mailed another letter to Dr. Woods, informing him that, pursuant to the terms of the deed from John Donley, the company was then paying the taxes oh Dr. Woods’ land for the year 1913, and was having the land assessed for the taxes of 1914.
It appears that, Dr. Woods having moved from Sherrill to Altheimer, Art., the letter dated the 4th of December, 1913, was returned to the writer unopened, and was, on the 17th of April, 1914, addressed and mailed to Dr. Woods at Altheimer, Ark., with a letter informing the doctor that the sawmill company had had his land assessed for the taxes of 1914.
Dr. Woods, as a witness in his own behalf, admitted that he had a faint recollection of receiving the letter dated the 29th of April, 1912, but denied that he had received either of the other letters written by the sawmill company. He promptly paid the taxes on his land for the years 1912 and 1913, and the sawmill company also paid them promptly for both years. This suit was filed before the assessment rolls for 1914 were made up. .
In the early part of the year 1914, the sawmill company laid its railroad tracks on Dr. Woods’ land and began cutting and removing the timber. Dr. Woods immediately filed this suit to prevent the removal or cutting of the timber, to have the timber contract between Donley and the sawmill company decreed to be at an end, null and void, and to have all of the timber' on the land decreed to be the property of the' plaintiff. He obtained a writ of injunction preventing any further cutting of timber on his land, pendente lite. And he prayed for a judgment for the value of the timber already cut and removed.
The plaintiff alleged in his petition that the sale made by him to Donley, reserving the right to repurchase the property within a year, was made only to secure the payment of a loan of $337.59, which Donley had made to the plaintiff, and which he paid to Donley on the 22d of January, 1906, when the latter reconveyed the land to the plaintiff. He alleged that on that date he and Donley sold to the Union Sawmill Company certain rights on all of the timber measuring eight inches or more in diameter, as shown by the contract signed by Donley and duly recorded.
The plaintiff admitted in his petition that the Union Sawmill Company paid the price stated in the contract when it was signed, paying $341.80 to John Donley, and the balance, $958.20, to the plaintiff. Quoting the clauses of the contract, requiring the sawmill *559 company to cut and remove the timber as expeditiously as possible and allowing the company additional time beyond the term of six years on paying the taxes on the land, the plaintiff alleged that the contract had expired by limitation on the 22d of January, 1912. He urged the following reasons or grounds for maintaining that the' contract was null and of no effect, viz.:
First. That the Union Sawmill Company did not cut the timber “as expeditiously as possible,” and, in fact, did not begin cutting the timber until two years after the expiration of the term of six years within which the company wás to cut and-remove it “as expeditiously as possible.”
Second. That the contract was not signed or accepted by the grantee; that therefore the latter was not bound by the clause purporting to give the grantee further time beyond the term of six years to cut and remove the timber, on becoming responsible for the payment of the taxes; and that that clause was therefore a potestative condition of the contract, depending solely upon the will of the grantee.
Third. That the clause purporting to allow the grantee further time after the term of six years in which to cut and remove the timber was subject and subordinate to the stipulation that the timber should be cut and removed “as exi:>editiously as possible.”
Fourth. That the defendant did not pay or offer to pay to the plaintiff the taxes paid on the land after the 22d of January, 1912.
Fifth. That the clause purporting to allow the defendant further time to cut and remove the timber, after the term of six years, did not put any limit on the additional time for cutting or removing the timber, and was therefore contrary to the policy of the law.
■ After filing the suit, the plaintiff’s attorney observed that the letter to Edward Everett, the deputy clerk of court, did not authorize John Donley to allow the sawmill company any further time beyond the term of six years to cut or remove the timber. He then filed a supplemental petition, contending that John Donley had no authority to allow the sawmill company more time than six years from the date of the contract to cut or remove the timber. The defendant’s attorney objected and excepted to the supplemental petition being allowed or considered, on the ground that it was filed without consent of the court, and was inconsistent or in conflict with certain averments in the original petition. The court sustained the objection, and declined to consider the supplemental petition.
In answer to the suit the defendant contended that the plaintiff had no right to institute the action, because, in the deed by which Donley transferred the land back to Dr. Woods, it was declared that all of the timber eight inches or larger in diameter was excepted from the sale, and there was no transfer or subrogation to Dr. Woods of any of Donley’s rights in or under his contract with the defendant. Further answering, the defendant contended that the clause in the contract, requiring the grantee to cut and remove the timber “as expeditiously as possible,” should be given a reasonable interpretation, and meant that the timber was to be removed as soon as it could be done without sacrifice of other timber that the sawmill company had to get out and manufacture into lumber. The defendant alleged that it had not been possible to begin removing the timber from the plaintiff’s land sooner than the defendant began to remove it, except at a great loss to the company.
The defendant contended that, although the deed from Donley was not signed by the grantee, it was nevertheless accepted and acted upon by the grantee. It was admitted in the defendant’s answer that 'the grantee was not entitled to an indefinite term, depending upon the will of the grantee, to cut and remove its timber from the plaintiff’s *561 land. Tiie defendant prayed that the writ of injunction be dissolved and the plaintiff’s demands rejected; that the defendant be allowed two years from the date of final judgment herein in which to cut and remove its timber from the plaintiff’s land; and that defendant have judgment |in reconvention against the plaintiff for $1,250 damages caused by the injunction.
Judgment was rendered in favor of the plaintiff, making the injunction perpetual, declaring the plaintiff to be the owner of all of the timber on his land, and condemning the defendant to pay $7 as the value of the timber cut and removed before the writ of injunction issued. The defendant prosecutes this appeal, and the plaintiff has answered the appeal, praying that we allow and give consideration to his supplemental petition.
Opinion.
If we assume that the defendant did not acquire from John Donley the ownership of the timber eight inches or larger in diameter, but acquired only the right to cut and remove the timber within the period of six years, it would not follow that the timber that the defendant had failed to cut or remove at the end of the six years became the property of the plaintiff. For the timber was expressly reserved or excepted from the sale made by Donley to the plaintiff. There was no transfer or subrogation to the plaintiff of Donley’s rights in or under his contract with the defendant. Therefore at the expiration of the term of six years allowed for the cutting and removal of the timber, the relation between the plaintiff and defenciant, with regard to the property, was that the defendant owned the timber on the plaintiff’s land, without a definite time in which to cut and remove it. The plaintiff’s remedy, under the circumstances, was, not to prevent the defendant from removing its timber from his land, but to demand that the timber be removed, and, if necessary, to sue to have the time for the cutting and removal of the timber fixed by a judgment of court. See Savage v. Wyatt Lumber Co., 134 La. 627, 64 South. 491. Such a suit would be in the nature of an action for a partition or division of the property, of which the plaintiff owned the land and the defendant the timber eight inches or larger in diameter.
Although the deed from Donley to the defendant was not signed by the grantee, the latter paid the price, and, by the letter dated the 29th of April, 1912, formally accepted the deed and was bound for all of the obligations imposed upon the grantee by the terms of the contract.
It is not necessary to decide whether the defendant complied with that clause of the contract requiring the grantee to cut and remove the timber “as expeditiously as possible.” If there was a violation of the contract in that respect, it was only a passive violation. No demand was made, either by the plaintiff or by John Donley, that the defendant cut and remove its timber from the plaintiff’s land. Without having made demand for performance of the contract, the plaintiff had no right to demand that it be rescinded for nonperformance or for a passive violation. R. C. C. 1912.
The contention urged by the plaintiff in his supplemental petition, that he had not authorized John Donley to allow the defendant more than six years in which to remove the timber, was a direct contradiction of the admission in his original petition, not merely that he had authorized the contract as made, but that he and Donley had made it, and that it was signed only by Donley because the title to the property stood in his name. The district judge, therefore, ruled correctly in refusing to allow or consider the supplemental petition. It would be of no avail to the plaintiff in this case, however, If it should be considered, because the plaintiff could not *563 have tlie contract rescinded on the ground that he did not authorize it, without first returning or offering to return the price he received.
The defendant’s attorney admitted in his argument in this court that the taxes assessed against the plaintiff’s land for the year 1912 and for each year thereafter until the timber shall have been cut and removed should be paid to the plaintiff. He contends that the failure of the defendant to pay the amount of the taxes to the plaintiff — paying to the tax collector instead of the plaintiff— gave the plaintiff only the right to sue for and recover the amount, but not a right of action to rescind the contract or claim a forfeiture of title to the timber. Assuming, as the defendant admits, that the obligation of the defendant was to pay the amount of the taxes to the plaintiff, not to the tax collector, we agree with the defendant’s counsel that the payment to the tax collector instead of the plaintiff did not give the plaintiff a right of action for rescission of the contract or to claim a forfeiture of title to the timber.
The defendant is entitled to a decree fixing the time limit within which its timber shall be cut and removed from the plaintiff’s land. See Savage v. Wyatt Lumber Co., 134 La. 627, 64 South. 491. The evidence shows that two years would be a reasonable time for cutting and removing the timber after the writ of injunction is dissolved.
The evidence as to the damages alleged to have been caused by the writ of injunction is not altogether .satisfactory. The evidence of the value of the attorney’s fee for dissolving the writ has reference to the services rendered in defending the suit for annulment of the contract, and dissolving the injunction as a mere consequence of the plaintiff’s failure to maintain his action. The proof of other damages claimed by the defendant is not sufficient, in our opinion, to sustain a judgment on the defendant’s re-conventional demand for damages. We have concluded, therefore, to render a judgment of nonsuit on the reconventional demand for damages.
The judgment appealed from is annulled. The plaintiff’s demands are rejected and the writ of injunction is dissolved at his cost in both courts. It is ordered, adjudged, and decreed that, on payment to the plaintiff of all of the taxes assessed against his land for the year 1912 and for each year thereafter to and including two years after this judgment shall become final, the defendant shall have two years from and after the date when this judgment shall become final in which to cut and remove its timber from the plaintiff’s land, and that any and all timber remaining on the land at the expiration of the two years shall belong to 'the owner of the land. The defendant’s reeonventional demand for damages is dismissed as of nonsuit.